COURT OF APPEALS OF VIRGINIA


Present:    Judges Annunziata, Felton and McClanahan
Argued at Alexandria, Virginia


JOAN E. DAVIS JONES

v.        Record No. 1204-03-4

ROBERT M. DAVIS

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
APRIL 27, 2004


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
John R. Cullen, Judge

C. Waverly Parker for appellant.

Monica J. Chernin for appellee.


Joan E. Jones appeals the decision of the trial court awarding Robert M. Davis credits for

non-conforming payments against child support arrearages.  She contends on appeal that the

award contravenes the holding in Acree v. Acree, 2 Va. App. 151, 342 S.E.2d 68 (1986), and its

progeny.  For the reasons that follow, we reverse.

I.  Background

Joan E. Jones (mother) was divorced from Robert M. Davis (father) by decree entered by

the Circuit Court of Culpeper County on December 31, 1997.  They were granted joint legal

custody of their two minor children, Tara Elizabeth Davis and Matthew Abram Davis, with

primary physical custody of both children placed in the mother.  Father was awarded visitation

rights.  The divorce decree was remanded to the Culpeper Juvenile and Domestic Relations

District Court for subsequent resolution and adjudication of matters pertaining to custody and

support.  On June 1, 1998, the Juvenile and Domestic Relations District Court of Culpeper

County entered an award of support requiring father to pay to mother the sum of $973.74 per month for the support of the parties' children.

On January 25, 2001, the mother asked the father to pick up Tara. He did so, along with her belongings. No discussion took place regarding the length of time the child was to remain with the father. Additionally, there was no agreement to relinquish physical custody on a permanent basis, nor was there any agreement or discussion about eliminating or altering the support for either Matthew or Tara. Although the circuit court found that Tara's placement with her father was to be for "a period greater than a short visit," it also found that Tara's custody remained an issue in dispute. The court noted that "[w]hat took place after that date [January 25, 2001] was a protracted dispute in both the Juvenile and Domestic Relations Court and in this court over Tara's custody." That dispute was not resolved, the court continued, until temporary physical custody of Tara was awarded to father on July 25, 2001. A final award of custody was entered in father's favor on October 11, 2001. Matthew continued to live with mother.

After father took Tara into custody on January 25, 2001, he unilaterally altered his payment of child support to mother. Father paid to mother $500 in February 2001 and March 2001, but he paid nothing in April, May, June, July, August, September, October, and November of 2001.[1] Father did not file a petition for modification of support until November 20, 2001. Shortly after father filed his petition to modify support, mother filed a cross-petition seeking a judgment for arrearages.

Relying on our decision in Acree, the circuit court credited father for his support of Tara. Against the arrearages father owed on the unitary award for the period from February 1 through November 20, 2001, the circuit court allowed a credit for non-conforming support supplied

---

[1] The support due from father for periods following November 20, 2001 was paid prior to the proceedings in the circuit court.

in-kind in respect of Tara in the sum of $348 per month[2] commencing August 1, 2001 and ending November 20, 2001, for a total non-conforming credit of $1,264.40 with interest on the balance of each payment due from the date it became owing.[3]

Both mother and father appeal the decision of the circuit court.  Mother contends that Acree controls the outcome here and that father should not have been allowed any non-conforming credits.[4]  Father contends that he should have been awarded credits from January 25, 2001, the date he took *de facto* custody of Tara.  We agree that the trial court erred in awarding father credits against child support arrearages and, on that ground, we reverse the decision.

## II.  Analysis

Both parties question the court's application of the law to the facts of their case.  We review the legal issues presented *de novo*.  Rusty's Welding Serv. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999).

Normally, a parent paying child support pursuant to a court's decree may not unilaterally alter the amount or terms of payment.  See Code §§ 20-74, 20-108.  The parent must petition the court upon a showing of changed circumstances for a modification of a support decree.  Code §§ 20-74, 20-108.  Furthermore, "[n]o support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification."

---

[2] The trial court noted that this sum is derived from the "difference between the guideline amounts for two children . . . and for one child only."

[3] The specific credits allowed were as follows:  $348 for the payment due on August 1, 2001, $348 for the payment due on September 1, 2001, $348 for the payment due on October 1, 2001, and $220.40 for the payment covering the period from November 1, 2001, to November 20, 2001.

[4] Mother does not contest the formula used by the court to determine the amount of credits owed.  Accordingly, we will not decide whether the court applied the correct formula, only whether father was entitled to any credit.

Code §§ 20-74, 20-108. In other words, "child support payments required under a valid court order become vested as they accrue, and the court is without authority" to reduce the amount owed on past due installments by applying credits against that amount. Gallagher v. Gallagher, 35 Va. App. 470, 475-76, 546 S.E.2d 222, 224 (2001) (*en banc*).

This Court has established two exceptions to the statutory limitations on retroactive modification of past due child support payments. First, a credit will be allowed where: (a) an agreement exists between the parties that modifies only the method or terms of payment, and (b) that agreement has no adverse impact on the support award. Id. at 476, 546 S.E.2d at 225; see also Wilderman v. Wilderman, 25 Va. App. 500, 506, 489 S.E.2d 701, 705 (1997) (allowing father a dollar-for-dollar credit for cash sums he paid directly to the mother rather than to the Department of Child Support Enforcement as previously ordered by the court), overruled on other grounds by Gallagher, 35 Va. App. at 479, 546 S.E.2d at 226; Commonwealth v. Skeens, 18 Va. App. 154, 160, 442 S.E.2d 432, 436 (1994) (allowing credits against arrearages for benefits paid by the Social Security Administration to father's children).

Second, in Acree we held that a credit may be allowed

> [w]here . . . the custodial parent has by his or her own volition
> entered into an agreement to relinquish custody on a permanent
> basis and has further agreed to the elimination of support payments
> and such agreement has been fully performed, . . . the purpose to
> be served by application of an inflexible rule denying credit for
> nonconforming payments is outweighed by the equities involved.

Acree, 2 Va. App. at 157, 342 S.E.2d at 71. We further concluded that "[t]o enforce the letter of the decree after its purpose has been served and the parties' agreement fully performed would unjustly enrich the wife" and that "failure to enforce the letter of this decree under these circumstances will not work to the detriment of the child." Id. at 158, 342 S.E.2d at 72.

This Court reconsidered Acree in Gallagher. There, we disagreed with appellant-father's argument that "Acree is not and need not be limited to instances in which the parties have agreed

- 4 -

to a total transfer of custody." Gallagher, 35 Va. App. at 477, 546 S.E.2d at 225. Consequently, we specifically limited the holding in Acree to its facts, although we did not overrule it. Id. at 479, 546 S.E.2d at 226; see also Miederhoff v Miederhoff, 38 Va. App. 366, 372, 564 S.E.2d 156, 159 (2002) (applying Acree).

The circuit court below based its decision on Acree, finding the instant case analogous. However, Acree does not support the result reached. Here, father and mother did not agree to a permanent change in custody. Although Tara came into father's custody on January 25, 2001, at mother's request, the record shows that the parties disputed custody until the court entered a temporary order changing custody to father on July 25, 2001. Indeed, the absence of an agreement caused the trial court to note that "unlike Acree, there was not a formalized agreement to relinquish custody on a permanent basis, nor was there further agreement to eliminate support payments for Tara. This is how this case differs dramatically from the Acree case."

In lieu of an agreement establishing the permanent transfer of Tara's custody to the father, the trial court found that the "order changing custody . . . is the equivalent of an unequivocal agreement to change custody." It also found that two other Acree factors had been satisfied, concluding that mother would be unjustly enriched if the original order of support were enforced and that "allowing a credit for the non-conforming payments due to Tara living with her father would not adversely affect" the purposes of the original child support order. The trial court's conclusion was supported by the evidence that Tara had lived with her father since January 25, 2001 and that mother's answer to an interrogatory established that "in the event Tara went to live with her father and the child support was reduced accordingly, the net effect on her household would be nil or *de minimis* because she expended all of that child support for Tara for her benefit." However, the trial court found that the parties had not agreed that child support payments for Tara would be terminated.

We agree that the court's order transferring custody of Tara to father substitutes for the Acree requirement that an agreement by the parties regarding permanent custody must be established before credits against arrearages may be considered. We also agree that the evidence supports the trial court's conclusion that mother would be unjustly enriched in the absence of awarding credits to father and that such an award would not be detrimental to the child in question. However, as the trial court pointed out, the evidence does not support any finding that the parties reached an agreement on child support; the absence of such an agreement is fatal to father's claim for credits against child support arrearages. Thus, although we find persuasive the trial court's reasoning and its conclusion that credits against arrearages were warranted on equitable grounds, its decision must be reversed because it does not comport with Acree and its progeny limiting Acree to its facts. Constrained by those decisions, we find that the trial court erred in allowing credit for non-conforming payments in this case where no agreement as to child support existed between the parties and no petition for modification of support was pending during the period for which credits were awarded. Code §§ 20-74, 20-108; Skeens, 18 Va. App. at 158, 442 S.E.2d at 435. Accordingly, we reverse the decision of the trial court and remand the case with direction that a judgment be entered against father for the amount of his arrearages without adjustment for non-conforming payments.

Finally, we are not unmindful of the father's argument that to deny him credits against the arrearages owed in this case inequitably enriches the mother without benefiting the child. "[U]njust enrichment is an unfortunate by-product of our decision but, standing alone, does not compel a different result." Gallagher, 35 Va. App. at 478, 546 S.E.2d at 226. His remedy does not lie with the courts, but with the legislature.

- 6 -

### III. Attorney's Fees

Father finally argues that the trial court erred by failing to award him attorney's fees. The decision to award attorney's fees is left to the sound discretion of the trial court, and we will not overturn that decision on appeal unless the trial court abused its discretion. Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). The parties to the instant case presented the trial court, and our Court, with arguments supported by the law and the evidence. See Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994). Accordingly, we hold that the trial court did not err in failing to award attorney's fees.

### IV. Conclusion

For the reasons stated above, we reverse the decision of the trial court and remand the case with direction that a judgment be entered against father for the amount of his arrearages without adjustment for non-conforming payments.

Reversed and remanded.

McClanahan, J., concurring.

I concur with the majority opinion reversing the judgment of the trial court. However, I write separately because the Court need go no further than the Code of Virginia to hold that a judgment should be entered against the father for the amount of his arrearages without adjustment for non-conforming payment.

The General Assembly has passed legislation no fewer than *six* times that includes the following language with respect to modification of support awards: "No support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party." Code §§ 20-74, 16.1-278.18, 20-49.10, 20-108, 20-112, 63.2-1916. The policy of the state legislature is clear that no retroactive modification of support awards is allowed. The trial court awarded father credit retroactively for non-conforming payments of his court-ordered support obligation. The legislature has provided no such exception, but for the period of time in which there is a pending petition for modification. In this case, the notice of the petition to amend support was dated November 8, 2001. Any modification of the support order for any period of time prior to that date is prohibited. Clearly, the laws do not allow credit for non-conforming payments such as these.