COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges McCullough and Huff
Argued at Alexandria, Virginia


FAYSAL M. ZEDAN

                                                                    OPINION BY
v.        Record No. 2570-11-4                      JUDGE STEPHEN R. McCULLOUGH
                                                                    AUGUST 7, 2012
SYLVIE E. WESTHEIM



                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                    Brett A. Kassabian, Judge

                J. Thomas Fromme, II (The Law Offices of J. Thomas Fromme, II,
                PC, on briefs), for appellant.

                Ryan M. Witkowski (Caroline D. LaForge; The Condo Law Group,
                P.C., on brief), for appellee.


        Faysal M. Zedan ("father") was held in contempt of court for failing to pay child support

pursuant to the parties' final decree of annulment.  He appeals this ruling, raising ten assignments of

error.[1]  Sylvie E. Westheim ("mother") assigns cross-error to the trial court's decision to credit

tuition payments made by father on behalf of the children towards his child support obligation.  We

hold that Code § 20-99.1:1(A) required notice to father of the proposed entry of the final decree of

annulment because father had filed an answer.  We reverse the finding of contempt on the ground

that no evidence establishes that father ever received notice of the decree of annulment that

establishes father's child support obligation.  We further reverse the trial court's award of a credit

toward father's child support obligation based on tuition payments made by father.  We hold,

however, that the failure to provide father with notice of the proposed entry of the decree of

        [1] With respect to assignments of error eight and ten, appellant states on brief that he
"elects not to proceed with these assignments of error."  Appellant's Br. at 32.  Therefore, we do
not consider them.

annulment does not render the annulment decree void *ab initio*. Therefore, father may not collaterally attack the annulment decree more than five years after it became final. Finding the decree to be valid, we reject father's remaining assignments of error, and remand for further proceedings to determine how father should be brought into compliance with the child support provisions of the annulment decree.

BACKGROUND

I. FATHER'S AND MOTHER'S MARRIAGE IS ANNULLED ON THE GROUND OF BIGAMY.

Father and mother were wed in 1995, in New York. Three children were born to father and mother. In December of 2004, father and mother executed a separation, custody, support, and property settlement agreement. Under this agreement, father agreed to pay $1,000 per month for each child as child support, increasing automatically by five percent each year until the child reached the age of 22 or graduated from college. Father also agreed to pay $3,500 per month in spousal support until wife remarried or was deceased. This agreement was never incorporated into a court order.

Then, in June of 2005, mother filed a bill of complaint seeking the annulment of the marriage on the ground of bigamy. Mother alleged that father had married another woman in 1966 and that he was still married to this other woman when he and mother purported to marry.

Mother mailed father an "answer and grounds of defense" that was prepared by mother's lawyer. The answer consists of the following:

> Your Respondent, Faysal M. Zedan, respectfully represents as follows:
>
> 1.      I am in receipt of the Subpoena in Chancery and the Bill of Complaint in the above-referenced matter.
>
> 2.      The allegations in the Bill of Complaint are admitted.
>
> 3.      Respondent agrees that he is responsible for paying child support in the amount of __$7,000.00_____ per month

each month beginning on the first day of the month next following
the entry of any Order of annulment for such time as is provided by
the Code of Virginia (1950), as amended.

Father, who resided in the Republic of Ghana at the time, signed the answer on July 12, 2005 at the United States embassy in Accra. The substance of father's answer appears on one page and his signature appears on a different page. Father then mailed a copy of this answer to mother, who turned it over to her attorney.[2]

On January 24, 2006, the Circuit Court for Fairfax County entered a final decree of annulment declaring the marriage void *ab initio* on the ground of bigamy. Consistent with father's answer, the decree ordered father to pay $7,000 per month in child support, beginning February 1, 2006. The order is styled "we ask for this" and is signed by counsel for mother. Neither father nor an attorney for father endorsed the order. The order lists as a residential address for father "Mohammed Rifa Street #8441, Jetta, Saudi Arabia."

II. CHILD SUPPORT ENFORCEMENT PROCEEDINGS AGAINST FATHER

On October 3, 2011, while father was on a visit to the United States, mother filed a rule to show cause alleging that father had failed to pay child support as ordered by the court. In response, father filed a motion to vacate the final decree of annulment and the child support provisions of that decree. Father argued that he had never received notice of this order. He asked that the court declare void the annulment decree and dismiss the rule to show cause.

At a hearing, father testified that while he was working in Ghana, mother sent a document to him and urged him to sign it. He said that the page attached to the signature page was "a different page" from the one in the court file, although it was "perhaps a divorce paper." According to father,

---

[2] We note that father was no unsophisticated litigant: he achieved the exalted rank of Ambassador to the United States for the Saudi Kingdom, he holds an undergraduate as well as a doctorate degree from universities in the United States, and his testimony demonstrates essential fluency in English.

there were no dollar figures in the document that he signed. Father testified that mother told him she needed a divorce paper in order to obtain a green card. He said he signed the paper "just to help her out."

Following his stay in Ghana, father next worked in Riyadh, Saudi Arabia, and from there he moved to Bahrain. He testified that the first time he saw the decree of annulment was when he arrived in the United States in November of 2011. Father said that he did not reside at the address listed on the final order, that there is in fact no such address, and that the City of "Jetta" as listed on the divorce decree is not an accurate spelling of the City of Jeddah.[3]

Father introduced into evidence an "ROA Report" from Fairfax County Circuit Court listing activities in the case. The sheet does not show mailing or service of the final decree of annulment.

On cross-examination, father acknowledged sending an email in 2006 in which he addressed mother as "dear ex-wife." This electronic mail message, labeled Plaintiff's Exhibit 12, was never moved into evidence.

For her part, mother denied any trickery. She testified that her attorney prepared the answer, she forwarded it to father by mail, and father mailed it back to her after he signed it.

The evidence showed that father made regular monthly payments to mother, but those payments fluctuated significantly from month to month. Some exceeded the amounts owed under either the separation agreement or the decree of annulment, while other payments fell short. Mother offered financial documents showing, based on a $7,000 monthly obligation, that father owed child support arrears in the amount of $205,140.72.

Father testified that he paid tuition amounting to $25,758 for the three children to attend school in Bahrain for one semester. The payments were actually made by the Zedan Group, which

---

[3] We note that father's motion to vacate the final decree of annulment states that father "relocated to Jetta [sic], Saudi Arabia" in December of 2006.

is owned by father's brother.  Father considered these payments a loan to him from the Zedan

Group.  According to father, mother "picked the school" and arranged for the children to attend.

When asked at trial whether there was an agreement with respect to whether these tuition payments

would "enter into support issues," father said he did not need an agreement.  Mother testified that

she never asked him to pay for the children's education.  Instead, she "asked him for child support."

At the conclusion of the hearing, the court expressly rejected father's testimony that he did

not sign the answer to the petition for annulment and that he did not answer the suit.  Instead, the

court credited mother's testimony.  The court found father in contempt, and assessed the child

support arrearage in the amount of $205,140.72.  The court concluded that Code § 20-99.1:1 applied

only in those situations where the defendant has accepted service or waived service.  Here, the court

noted, the defendant had filed an answer.  The court found that father had not met his burden under

Code § 8.01-428(C) to set aside the annulment decree.  Finally, the court awarded father a child

support credit for the $25,758 based on the payments he made for the children's tuition.

ANALYSIS

I. LACK OF NOTICE PRECLUDES A FINDING OF CONTEMPT BUT DOES NOT RENDER
THE DECREE OF ANNULMENT VOID.

We first address three interrelated assignments of error:  (1) the trial court erred in

concluding that mother properly complied with Code § 20-99.1:1; (2) the trial court erred in holding

father in contempt and incarcerating him as there was no evidence of a willful or intentional

disobedience of a court order by the father; and (3) the trial court erred in failing to vacate the final

decree because there was no evidence that father was given notice of the decree.[4]

---

[4] Throughout his brief, father mentions, usually in passing and without any citation to
authority, due process or the Due Process Clause.  Father has not made any assignment of error
invoking the Due Process Clause.  Under Rule 5A:12(c)(1)(i) and Rule 5:20(c), we will not
consider claims of error for which there is no assignment of error.  Therefore, we do not address
any purported error under the Due Process Clause.  See also Yeatts v. Murray, 249 Va. 285, 290,
455 S.E.2d 18, 21 (1995) ("The purpose of assignments of error is to point out the errors . . . on

A.  Code § 20-99.1:1(A) requires notice to a defendant prior to entry of
orders when the defendant has filed an answer.

Father's first assignment of error with regard to the notice or lack thereof is that the trial

court erred in holding that mother complied with the requirements of Code § 20-99.1:1(A).  That

code provision provides that

> A defendant in such suits may accept service of process by signing
> the proof of service before any officer authorized to administer
> oaths.  This proof of service shall, when filed with the papers in the
> suit, have the same effect as if it had been served upon the
> defendant by a person authorized to serve process.  In addition,
> service of process may be accepted or waived by any party, upon
> voluntary execution of a notarized writing specifying an intent to
> accept or waive any particular process, or by a defendant by filing
> an answer in the suit.  Such notarized writing may be provided in
> the clerk's office of any circuit court and may be signed by such
> party to the proceedings before any clerk or deputy clerk of any
> circuit court, under oath, or may be drafted and filed by counsel in
> the proceeding, and shall, when filed with the papers in the suit,
> have the same effect as if the process specified had been personally
> served upon the defendant by a person authorized to serve process.
> *The court may enter any order or decree without further notice*
> *unless a defendant has filed an answer in the suit.*

(Emphasis added).

"An issue of statutory interpretation is a pure question of law which we review de novo."

Ford Motor Co. v. Gordon, 281 Va. 543, 549, 708 S.E.2d 846, 849 (2011).

Father argues that mother did not comply with this statute because mother never provided

him with notice of the proposed entry or of the entry of the decree of annulment.  The trial court

rejected this argument, reasoning that the concluding phrase, "unless a defendant has filed an

answer in the suit," "to only be applicable in those situations where defendant has accepted service

or waived service in this case.  This is clearly a scenario where the defendant has answered a suit in

---

which appellant intends to ask a reversal of the judgment, *and to limit discussion to these*
*points.*" (emphasis added) (quoting Harlow v. Commonwealth, 195 Va. 269, 271, 77 S.E.2d 851,
853 (1953))).  Whether a due process violation might render a decree void rather than voidable is
an issue for another day.

this case." Mother argues that "[t]he last sentence [of Code § 20-99.1:1(A)] insures that when a defendant accepts or waives service of process *and* files an answer, the defendant will not be denied notice." Appellee's Br. at 10.

When statutory language is "clear and unambiguous, [reviewing courts] apply the statute according to its plain language." Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv., Inc., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006). The plain language of Code § 20-99.1:1(A) means what it says: once a defendant has filed an answer in the suit, no order or decree may be entered without notice. Father filed an answer in the suit. Therefore, father was entitled to notice before entry of the decree of annulment. Moreover, Code § 20-99.1:1(A) provides that filing an answer constitutes a waiver of service of process. This reading of Code § 20-99.1:1(A) is consistent with the notice contemplated by Rule 1:13 and with elementary due process considerations.[5] See Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

There is no evidence that father ever received notice that mother had tendered the annulment decree or that it had been entered. Mother was in regular communication with father, yet she offered no evidence that father was notified of the proposed decree or its entry. There is no testimony in the record regarding court procedures or practices with regard to the mailing of orders that would establish that father might have received notice through the clerk's office. The "ROA Report" from the Fairfax County Clerk's Office does not show that the order was sent to father. Father denied ever receiving notice of the order. Father testified without contradiction that the

---

[5] To the extent father argues that he was required to receive *service of process* on all further notices or orders after he filed an answer, the statute does not support this claim. Once a suit has been initiated based on proper service of process or a waiver of service of process, including waiver by the filing of an answer, further notices or orders may be served by delivering or mailing a copy to counsel or to a litigant *pro se*, accompanied, of course, by the proper certificate. See Code § 20-99(4).

address listed for father in the order was one he had never used and, in fact, was a nonexistent address. Moreover, the city of "Jetta" rather than "Jeddah" was listed on the order.

The trial court did not find that mother notified father that the order was tendered for entry or that the order was actually entered. Instead, the court found that mother had complied with Code § 20-99.1:1(A) because the final sentence of subsection (A) applies only to defendants who have been served with process or who have waived service of process. Because father did not do either of those things, the court reasoned, the statute was inapplicable. As noted above, we reject that interpretation. The statute plainly provides that no further order is to be entered without notice when a defendant has filed an answer.[6]

Mother correctly notes that father had every reason to expect a divorce or annulment and, because he filed an answer, he had notice that such proceedings had begun or soon would begin. The answer that father signed stated that he was "in receipt of the Subpoena in Chancery and the Bill of Complaint in the above-referenced matter." Knowledge of *potential* proceedings, however, is not the same as knowledge of a *proposed or entered court order*. Code § 20-99.1:1(A) requires notice prior to entry of orders, not a generalized awareness of court proceedings or potential proceedings. Mother's argument would essentially render the final sentence of Code § 20-99.1:1(A) a dead letter. Moreover, father certainly was aware that his marriage effectively was over: the parties had signed a separation agreement on the basis of "irreconcilable differences," the parties lived on separate continents, and father had signed an answer obligating himself to pay $7,000 in monthly child support "following the entry of any Order of annulment." Although father could expect to receive a decree of annulment at some point, there is no evidence in the record that he actually received notice that mother had tendered the decree for entry.

---

[6] In contrast to Rule 1:13, Code § 20-99.1:1 contains no provision allowing the court, in its discretion, to dispense with the required notice.

The fact that father referred to mother as his "ex-wife" in an email message does not establish as a matter of law that father knew that the marriage had been legally annulled by entry of a final court order or, more significantly, that the court had entered an order that imposed a legally binding child support obligation on him.[7] This reference to "ex-wife" most likely signals father's understanding that, as a practical matter, the marriage was over. The statute required mother to provide notice. A reference to mother as "ex-wife" does not establish compliance by mother with the notice provisions of Code § 20-99.1:1(A).

Mother also argues that father must have been aware of the entry of the order because, according to his testimony, he paid $3,000 per month for support instead of the $6,500 in combined spousal and child support he agreed to pay under the separation agreement. She contends that father "would have believed he only owed $3,000 per month only if he believed he did not have to pay spousal support because of the annulment." Appellee's Br. at 12. This argument is unpersuasive. Mother's own evidence showed that the monthly amounts paid by father fluctuated significantly from month to month. For example, father paid $6,770 in June of 2006, $1,923 in March of 2007, and back to $6,603.36 in May and June of 2010. These widely varying amounts give rise to no inference that father knew an order had been entered displacing his contractual obligation under the settlement agreement and obligating him instead to pay $7,000 in monthly child support.

We note that, under some circumstances, a litigant might be charged with a duty of inquiry or might forfeit the requirement of notice. Code § 8.01-428(C) presupposes a duty by a litigant to diligently inquire into the progress of litigation to which the litigant is a party, particularly with

---

[7] Father assigns error to the trial court's reliance on mother's Exhibit 12. Exhibit 12 was a printout of an email message in which father addressed mother as "ex-wife." The trial court mentioned this exhibit in making its factual findings that father was not tricked by mother into signing something other than the answer that was submitted to the court. Although father was questioned about the exhibit, it was never admitted into evidence. Father, however, admitted on cross-examination to referring to his wife as "ex-wife" in the email. In light of this evidence, any error in considering Exhibit 12 was harmless.

respect to the entry of final orders. Code § 8.01-319(A) requires a *pro se* litigant to inform the clerk's office of a change of address. A litigant also might forfeit certain rights under the doctrine of "fugitive disentitlement." Sasson v. Shenhar, 276 Va. 611, 623, 667 S.E.2d 555, 561 (2008). We need not determine under what circumstances a litigant might have such a duty of inquiry or might forfeit the right to notice because mother does not make these arguments.

We find no basis in the record to support the conclusion that mother provided father with notice of the proposed annulment decree. Therefore, we hold that mother did not comply with the requirements of Code § 20-99.1:1(A).[8] We next address the consequences of that failure of notice.

B. A person may not be held in contempt of court for violating an order when the litigant had no knowledge of the entry of the order or its contents.

"[W]e review the exercise of a court's contempt power under an abuse of discretion standard." Petrosinelli v. People for the Ethical Treatment of Animals, 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007). "[A] trial court by definition abuses its discretion when it makes an error of law." Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (citation omitted).

The exercise of the contempt power "'is a delicate one and care is needed to avoid arbitrary or oppressive conclusions.'" Scialdone v. Commonwealth, 279 Va. 422, 442, 689 S.E.2d 716, 727 (2010) (quoting Cooke v. United States, 267 U.S. 517, 539 (1925)). In order to hold a litigant in contempt for violation of a court order, the litigant must have knowledge of the terms of the order. See Tsai v. Commonwealth, 51 Va. App. 649, 653, 659 S.E.2d 594, 596 (2008) (holding that a court may not hold a person in contempt when that person never received "notice of any kind" of an order); see also Calamos v. Commonwealth, 184 Va. 397, 406, 35 S.E.2d 397, 400 (1945) ("Since

---

[8] Code § 20-99.1:1 does not specify who must provide the notice. We conclude that the opposing litigant must provide the required notice and that, when a defendant has filed an answer, a court must satisfy itself that notice was given before entry of the order, or that the defendant had actual notice. See Rollins v. Commonwealth, 211 Va. 438, 441-42, 177 S.E.2d 639, 642 (1970); Tsai v. Commonwealth, 51 Va. App. 649, 653-56, 659 S.E.2d 594, 596-97 (2008).

the evidence fails to show that [the plaintiff] had actual knowledge or notice of the . . . order . . . the court erred in holding him (the plaintiff in error) in contempt for violating such order.").

Consistent with the requirement of knowledge, to hold a litigant in contempt, the litigant must be "'acting in bad faith or [in] willful disobedience of [the court's] order.'" Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991) (quoting Carswell v. Matterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982)). "Willful" means that the conduct is deliberate or intentional. See Angstadt v. Atl. Mut. Ins. Co., 254 Va. 286, 293, 492 S.E.2d 118, 122 (1997) (discussing "willful"); see also Snead v. Commonwealth, 11 Va. App. 643, 646-47, 400 S.E.2d 806, 807 (1991) (same).

The evidence establishes that father never received notice that the decree of annulment, including its child support provisions, had either been tendered for entry or had been entered. Absent such notice, his disobedience of the court order could not have been willful. Father, who is over seventy years old, was ordered to be incarcerated for willfully disobeying an order despite the fact that no evidence established that he had notice of the order. We conclude, therefore, that it was error for the trial court to hold father in contempt of court.

C. Lack of notice of the entry of the order does not render the order void *ab initio*.

We next confront once again the knotty problem of whether the annulment decree is void from its inception, *ab initio*, or whether the order is merely voidable. The distinction is an important one in the law because an order that is void *ab initio* constitutes a legal nullity that is subject to challenge "at any time," including many years after its entry. Singh v. Mooney, 261 Va. 48, 51, 541 S.E.2d 549, 551 (2001). If, however, the order is valid, and is merely voidable, strict timelines constrain a litigant's ability to correct any errors the trial court may have made. Whether an order is void or voidable involves competing considerations. Courts must, on the one hand, follow proper procedures and abide by the requirements of the law. On the other hand, the law values finality and

- 11 -

repose.  Declaring a final decree of divorce or annulment void, years after the fact, could create great disruption in the lives of parties who may have since remarried, and who may have ordered their lives and sold or redistributed marital assets in conformity with the decree.

The Supreme Court has held that

> [a]n order is void *ab initio* if entered by a court in the absence of jurisdiction of the subject matter or over the parties, if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court "could not lawfully adopt."

Id. at 51-52, 541 S.E.2d at 551 (quoting Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73, 495 S.E.2d 825, 828 (1998)).  The trial court here had jurisdiction over the subject matter.  Code § 20-89.1 authorizes courts to adjudicate suits for annulment.  Father does not contest the fact that the court had subject matter jurisdiction to adjudicate suits seeking an annulment.[9]

Father, however, assigns error to the trial court's finding that it had jurisdiction over his person.  He argues that the trial court never acquired *in personam* jurisdiction over him and, further, that under Code § 20-99.1:1(A), the trial court did not have jurisdiction over him *at the time it entered the final decree of annulment* due to the failure to provide him with notice of the presentation of the final order for entry.  The assumption behind this argument is that a court might continually lose and regain jurisdiction over a litigant throughout the course of the litigation, depending on how and whether notice is provided.  As to the first contention, by submitting his answer, through mother, to the court, father submitted himself to the jurisdiction of the court.  See Code § 20-99(4).  Father never made a special appearance to contest jurisdiction.  Instead, he filed

---

[9] "[E]ven where one acts in good faith, a bigamous marriage is void, and it confers no legal rights to the parties.  It is 'contrary to the laws of Virginia and public policy.'"  Kleinfield v. Veruki, 7 Va. App. 183, 190, 372 S.E.2d 407, 411 (1988) (quoting Chitwood v. Prudential Life Ins. Co. of America, 206 Va. 314, 317, 143 S.E.2d 915, 918 (1965)).  Although a bigamous marriage is "absolutely void, without any decree of divorce, or other legal process," Code § 20-43, a party may seek a judicial decree annulling the marriage on the basis of bigamy.  See, e.g., Shoustari v. Zamani, 39 Va. App. 517, 519, 574 S.E.2d 314, 315 (2002).

- 12 -

an answer. There is no question that filing an answer constitutes a general appearance that subjects a litigant to the jurisdiction of the court. Lyren v. Ohr, 271 Va. 155, 159, 623 S.E.2d 883, 885 (2006). As to father's contention that the court lost jurisdiction over him due to the failure of notice, we find no authority for that proposition.[10] Once a court acquires jurisdiction over a person, the court retains jurisdiction over the person to carry the proceedings through to their conclusion. To the extent the trial court commits any error of law, such as a failure to provide notice of a hearing, such an error does not divest the court of jurisdiction over the person.

The question left to resolve is whether the failure to provide notice means that the character of the order was such that the court had no power to render it, or whether the court adopted a "mode of procedure" that the court could not lawfully adopt. One example of an order that was declared void *ab initio* because the "the character of the judgment was not such as the court had the power to render" involved a sentencing order in excess of the sentencing range authorized by the legislature. Rawls v. Commonwealth, 278 Va. 213, 221, 683 S.E.2d 544, 549 (2009). Evans furnishes an example of an order that was void *ab initio* because the mode of procedure was one that the court could "not lawfully adopt." In that case, the court had entered an order restricting the exercise of the power of eminent domain of an airport authority. Because the power of eminent domain is an inalienable attribute of sovereignty, "the character of the judgment was not such as the court had the power to render," making the judgment void *ab initio*. Evans, 255 Va. at 73-74, 495 S.E.2d at 828. In Collins v. Shepherd, 274 Va. 390, 649 S.E.2d 672 (2007), the Supreme Court held that the

---

[10] We fail to perceive the relevance of Hayes v. Hayes, 3 Va. App. 499, 351 S.E.2d 590 (1986), the lone case cited by father on this issue. The issue in Hayes was whether wife's claim for spousal support was time-barred. Father notified wife, who was living in Germany, of the divorce proceedings by publication. This Court held that wife's spousal support claim was not time-barred. Hayes does not hold or even suggest that a failure of notice deprives the court of jurisdiction over the person who has not been notified of a proposed order.

- 13 -

premature dismissal of an action with prejudice pursuant to an unauthorized local rule rendered the order of dismissal void *ab initio.* The Court grounded its decision on the fact that the mode of procedure was one the court could not lawfully adopt. Id. at 402-03, 649 S.E.2d at 678.

The Supreme Court has in recent years placed the void/voidable distinction on the anvil and hammered out some guidance for lower courts. First, as a default principle, the Court has held that "[a] challenge to an order based on a trial court's misapplication of a statute generally raises a question of court error, not a question of the court's jurisdiction." Hicks v. Mellis, 275 Va. 213, 219, 657 S.E.2d 142, 145 (2008). Second, the Court specifically has addressed the consequences of a failure of notice. In Hicks, the Court held that the trial court's failure to provide notice to a party in interest that it was reinstating an action under Code § 8.01-335(B) rendered the order voidable rather than void *ab initio*. Id. at 219-20, 657 S.E.2d at 145-46. In Nelson v. Warden, 262 Va. 276, 285, 552 S.E.2d 73, 77-78 (2001), the Court concluded that the failure to notify a juvenile's father of proceedings in juvenile court was a legal error that rendered the judgment voidable rather than void *ab initio*.[11] Id. Finally, in Whiting v. Whiting, 262 Va. 3, 3-4 (2001) (*per curiam*), the Court reversed this Court's holding that the failure to provide notice of the final decree of annulment to husband as required by Rule 1:13 rendered the order void. Instead, the Court held, such a defect rendered the order voidable. Id.

Father's basic contention is that the court committed an error in 2006 when it entered an order without notice to him and that error rendered the judgment void. The error, however, was not one that renders the judgment void. The error did not deprive the court of jurisdiction over the

---

[11] We do not hold that all failures of notice render a judgment voidable rather than void. Some statutes might be structured in such a way as to deprive a court of jurisdiction upon a failure to provide a proper notice. See Nelson, 262 Va. at 282-83, 552 S.E.2d at 76-77 (noting that under predecessor parental notification statutes, improper notice deprived juvenile courts of subject matter jurisdiction). We simply hold that the failure to notify a litigant under Code § 20-99.1:1 following the submission of an answer is not a defect that renders the judgment void *ab initio*.

parties or affect the court's power to render judgment. As the Supreme Court has observed, "[a] court has jurisdiction to err, as well as to correctly decide the issues presented in a case, and the remedy to correct an error by a trial court is to appeal the court's decision upon entry of a final order, not to collaterally attack the erroneous decision in a separate action." Hicks, 275 Va. at 219, 657 S.E.2d at 145.

Soliman v. Soliman, 12 Va. App. 234, 402 S.E.2d 922 (1991), cited by father, does not compel a contrary conclusion. In that case, this Court vacated a divorce decree because the notice to wife did comply with the statute at the time and, moreover, there was no evidence that wife actually received this notice. Id. at 238-40, 402 S.E.2d at 926. Significantly, Soliman was a direct appeal rather than a motion to vacate a decree as void years after its entry. Id. at 236-37, 402 S.E.2d at 924. Soliman sheds no light on whether a failure of notice renders an order void or voidable because the Court never addressed the point.[12]

In sum, Code § 20-99.1:1 provides that, once a defendant has filed an answer, a court may not enter orders in divorce and annulment cases without notice to the defendant. No notice was provided here. Nevertheless, the lack of notice did not render the judgment of the trial court void. Moreover, father did receive notice of the order in November of 2011 when he returned to the United States and was served with the show cause. Therefore, while we reverse the finding of

---

[12] Father also relies upon two nonbinding circuit court decisions, Faine v. Faine, 28 Va. Cir. 49 (Alexandria 1992), and Small v. Small, 58 Va. Cir. 114 (Fairfax Cnty. 2001). Aside from a passing citation to Code § 8.01-428, Faine contains no citation to, or analysis of, applicable authority. Small held that a divorce decree was void because wife, who had never entered an appearance, did not receive proper notice of the presentation for entry of the proposed final order of divorce as required by Code § 20-99(3). The Faine court found significant that the notice was mandated by statute, as opposed to the notice contemplated by Rule 1:13. However, Nelson and Hicks, discussed above, also involved statutorily mandated notices, yet the Supreme Court found that the failure to provide the required notice did not render the judgment void. Therefore, we find these two cases unpersuasive.

contempt, we remand for the trial court to enforce as it deems appropriate the valid decree of annulment, including its child support provisions.[13]

## II.  CODE § 8.01-428(C) DOES NOT APPLY.

The trial court concluded that father had not met his burden under Code § 8.01-428(C) to set aside a judgment in the case.  Father assigns error to this conclusion, arguing that "[t]he court erred in applying Code § 8.01-428(C) to the Father's Motion to Vacate the Final Decree of Annulment." Father argues that his motion to vacate is grounded on the failure to provide him with the notice required by Code § 20-99.1:1(A).

We agree with father that Code § 8.01-428(C) is inapplicable.  Among other things, the sixty-day window contemplated by this statute has long passed.  At trial, father pursued a two-pronged collateral attack on the annulment decree.  First, he essentially argued that mother's alleged trickery constituted an extrinsic fraud on the court that rendered the order of annulment void *ab initio*.[14]  The trial court's factual finding that mother did not commit extrinsic fraud disposes of this theory.  Second, father contended that because he never received the notice required by Code § 20-99.1:1(A), the order was void *ab initio*.  As noted above, we conclude that any failure of notice under Code § 20-99.1:1(A) did not render the order void, thus disposing of father's second theory. To the extent the trial court misattributed a reliance by father on Code § 8.01-428(C), any such error was harmless because the court correctly rejected father's arguments that the order of annulment was void *ab initio*.

---

[13] Mother specifically asks this Court "to release to mother from father's Bond for Costs and Suspension, all damages, including the amount of arrearage . . . ."  Appellee's Br. at 29. Because we are remanding, we leave the manner of enforcing the decree in the capable hands of the trial court.

[14] A judgment obtained by extrinsic or collateral fraud is void *ab initio*.  Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987).

III. The fact that father's answer was prepared by counsel for mother provides no grounds for reversal.

Father next assigns error to the fact that the trial court accepted "the Answer and Grounds of Defense filed in this matter . . . as this pleading was prepared by Mother's counsel and sent to the Father to endorse, and it is improper for Mother's counsel to prepare . . . Father's Answer and Grounds of Defense." Mother's testimony establishes that the answer filed by father to the bill of complaint was prepared by counsel for mother. Father argues that "plaintiff's counsel is prohibited from preparing an answer to be signed by a[n unrepresented] defendant in a domestic proceeding." Appellant's Br. at 30. The lone authority cited for that proposition is the Fairfax County Circuit Court Manual, specifically, paragraph 1.02.C of Section H, which addresses "Domestic Relations Litigation." We find no basis for reversal on this ground. A court manual, however useful such manuals may be for judges, lawyers, and litigants, affords no basis upon which to reopen the judgment of a court more than five years after it became final. Indeed, the preface to the Manual makes clear that it does not purport to constitute binding authority.

IV. The tuition payments father made on behalf of the children should not have been credited to father because there was no agreement between father and mother to reduce the child support payments based on these payments.

Mother assigns cross-error to the circuit court's decision to credit tuition payments toward father's child support obligations. The court credited $25,758 toward father's child support arrearage. Father spent this sum on behalf of the children for one semester of tuition in Bahrain.

> Child support payments required under a valid court order become vested as they accrue, and the court is without authority to make any change as to past due installments. Generally, the terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree. When changed circumstances dictate a modification of a support decree, the appropriate remedy is for the party to petition the court to modify the decree. The party or parties may not unilaterally or bilaterally vary its terms.

- 17 -

However, although a court may not retroactively modify a child support obligation, allowing a payor spouse credit for non-conforming support payments, *in the limited situations where permitted,* is not a modification of the support order. A court may, when equitable and under limited circumstances, allow a party credit for non-conforming support payments, provided that the non-conforming payment substantially satisfies the purpose and function of the support award and to do so does not vary the support award.

Commonwealth v. Skeens, 18 Va. App. 154, 158, 442 S.E.2d 432, 434-35 (1994) (emphasis added) (citations omitted); see also Jones v. Davis, 43 Va. App. 9, 13-14, 595 S.E.2d 501, 503 (2004). "'Typically, two conditions must exist before credits will be given for non-conforming payments: (1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse effect on the support award.'" Gallagher v. Gallagher, 35 Va. App. 470, 476, 546 S.E.2d 222, 225 (2001) (*en banc*) (quoting Wilderman v. Wilderman, 25 Va. App. 500, 506, 489 S.E.2d 701, 705 (1997)). If these conditions are not met, "'payments made by an obligated spouse over and above court-ordered monthly support are considered gifts or gratuities.'" Buxbaum v. Buxbaum, 20 Va. App. 181, 186, 455 S.E.2d 752, 755 (1995) (quoting Sanford v. Sanford, 19 Va. App. 241, 248, 450 S.E.2d 185, 190 (1994)). A further limited exception exists, inapplicable here, where the custodial parent has agreed to relinquish custody on a permanent basis to the other parent. Acree v. Acree, 2 Va. App. 151, 157, 342 S.E.2d 68, 71 (1986).

In Gallagher, we refined our prior cases, holding that "to the extent our case law may be interpreted to hold that payments to 'third party vendors' may constitute non-conforming child support payments for which the payor spouse is entitled to receive credit . . . we expressly reject such an interpretation." 35 Va. App. at 479, 546 S.E.2d at 226. Examples of such "third party vendors" include items such as "day care, doctor visits [and] food." Id. at 479 n.1, 546 S.E.2d at 226 n.1. Absent an agreement between mother and father, payments made by father to a third party

vendor, in this instance a school, are considered gifts or gratuities and may not be credited toward father's child support obligation.

The trial court neither found an agreement between the parties nor does the record provide evidence of such an agreement. Mother testified that she never agreed to a reduction in the child support payment but rather insisted that he pay her child support. Father testified that he did not need such an agreement. We hold that crediting such payments constituted error. Consequently, we restore the arrearage owed by father to $205,140.72, which is the amount the trial court concluded father owed prior to awarding father credit for the tuition payment.

V. ATTORNEY'S FEES

Both parties request attorney's fees in connection with this appeal. After considering the record, we conclude that "the litigation addressed appropriate and substantial issues and that neither party generated unnecessary delay or expense in pursuit of its interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Accordingly, this Court denies both parties' requests for attorney's fees.

CONCLUSION

We reverse the finding of contempt because father never received notice of the final decree of annulment obligating father to pay child support. We reverse the court's holding that mother complied with Code § 20-99.1:1(A). We reverse the trial court's award of a credit toward father's child support obligation based on tuition payments father made on behalf of his children. We affirm the trial court's holding that the decree of annulment, and its attendant child support provisions, is not a void decree and, therefore, is not subject to collateral attack based on the lack of notice to father. We remand our decision to the trial court so that the court may, in its

discretion, determine how the child support provisions of the decree of annulment should be enforced.

<u>Affirmed in part,</u><br>
<u>reversed in part,</u><br>
<u>and remanded</u>