COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Raphael
Argued at Winchester, Virginia

DAO MINH LE

v.      Record No. 0045-22-4

OANH NGUYEN LE

MEMORANDUM OPINION[*] BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 15, 2022

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Judith L. Wheat, Judge

John L. Bauserman, Jr., for appellant.

Dusty Sparrow Reed (Sparrow Reed PLLC, on brief), for appellee.


Dao Minh Le ("father") appeals from an order of the Circuit Court of Arlington County ("circuit court") holding that he owed Oanh Nguyen Le ("mother") $89,363 in child support arrearages and awarding mother $24,525.01 in attorney fees and costs. Father contends that the circuit court erred when it failed to credit him for nonconforming child support payments made between August 2015 and January 2018 and when it awarded mother her attorney fees and costs. Father also contends that the circuit court erred when ruling that mother, who had been ordered to pay child support to father, would have no further child support obligation after the parties' child (the "child") turned eighteen years old. We disagree, and affirm the decision of the circuit court.

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father married mother on September 17, 2001, and one child was born during their marriage.[2] The parties separated after four years of marriage, and the Superior Court of Guam entered a final decree for dissolution of marriage on December 22, 2005. That final decree incorporated the parties' marital settlement agreement (the "MSA"), under which mother was awarded "full custody" of the child and was to care for the child "throughout the year," while father would "care for [the child] during the summer season as mutually agreed upon." The MSA also permitted the parties to modify its terms "by mutual consent" provided that such modification was "in writing and executed with the same formality" as the MSA.

The MSA required father to pay mother $1,800 per month in child support beginning on January 1, 2006, and continuing until the child "reaches the age of eighteen (18), marries, becomes emancipated, becomes self-supporting, or dies, whichever occurs first." The MSA also stated that father's child support payments "shall be increased annually consistent with the percentage of increase in [his] salary from the previous year" and further required father to pay the entirety of "all costs incident to providing each child with a private day school education through the completion of the twelfth (12th) grade." The MSA additionally provided in relevant part:

> The parties agree that any costs, including but not limited to counsel fees, court costs, investigation fees, and travel expense, incurred by a party in the successful enforcement of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action to compel compliance herewith, shall be borne by the defaulting party. Any such costs incurred by a party in the successful

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues father has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] The child turned eighteen years old during the pendency of this case.

- 2 -

defense to any action for enforcement of any of the agreements, covenants, or provisions of this Agreement shall be borne by the party seeking to enforce compliance.

Without mother's consent, father unilaterally reduced his child support payments beginning in 2009. Mother emailed father about the reduction, and, on December 14, 2009, father responded to her email by stating that she had "three options," which were to either "transfer [the child] to [him]," "sue [him] in court," or "adjust monthly payments." On June 7, 2011, mother emailed father again claiming that he had reduced his child support payments without her consent and requested that father fully pay his child support obligations. In August 2015, father was living in the United Arab Emirates ("UAE") and was employed as a senior commercial officer by the United States government. With mother's consent, the child began living with father to attend school and continued to live with father until January 31, 2018. Father failed to pay child support while the child was living with him.

During trial, both parties introduced evidence regarding their respective incomes and estimated amount of child support arrearages owed. Mother stipulated that the child lived with father between August 2015 and January 2018 with her consent but maintained that "[s]he was the primary custodian at the time." Father subsequently stipulated that mother "had a legal right to remove the child without his consent" from his care on January 31, 2018, to "assert her primary custody rights." Father also admitted that the custody and child support provisions stemming from their final divorce decree were not modified until August 30, 2019, and that mother was current on her child support payments.

The circuit court found that there had been a material change in circumstances warranting modification of the parties' child support obligations. As a result, mother's presumptive child support obligation was changed to $759 per month. The circuit court also denied father's request for credit for nonconforming child support payments, holding that $89,363 in arrearages was owed

- 3 -

to mother. In doing so, the circuit court found that mother "did not relinquish custody of [the] child" and that father "without consent, unilaterally stopped paying child support." The circuit court also awarded mother $24,525.01 in attorney fees and costs in accordance with the MSA and her fee affidavit that she submitted after closing arguments.

The circuit court also denied father's petition for a rule to show cause, stating:

> No additional information has been provided to the [c]ourt that [mother] is not current on any support payment. The minor child . . . turns 18 on December 23, 2021, and [mother] will have no further support obligation. Accordingly, the [c]ourt finds no basis to issue the Rule requested by [father].

A final order was entered on December 9, 2021. This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Da'mes v. Da'mes*, 74 Va. App. 138, 144 (2022) (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)). "Whether a contract entitles the prevailing party to attorney fees is a question of law that we review 'de novo.'" *Worsham v. Worsham*, 74 Va. App. 151, 178 (2022) (quoting *Online Res. Corp. v. Lawlor*, 285 Va. 40, 61 (2013)).

### B. *The End of Mother's Support Obligation*

Father contends that pursuant to Code § 20-124.2(C), the circuit court erred as a matter of law when it held that mother's duty to pay father child support terminated when the child turned eighteen. However, since the juvenile and domestic relations district court ("JDR"), not the circuit court, previously ordered the termination of the child support obligation when the child turned eighteen, we do not address this assignment of error because the assigned error does not arise from a final order of the circuit court in this case.

- 4 -

For example, in the section of the final order entitled "[Father's] Motion for a Rule to Show Cause is Denied," the circuit court merely confirms that mother had "made all payments ordered by the JDR Court" and based on the JDR order when "[t]he minor child . . . turns 18 on December 23, 2021, [mother] will have no further support obligation." "[A]ccordingly, the [circuit c]ourt has no basis to issue the Rule requested by [father]." In this context, the circuit court's recitation from the JDR order that mother's child support obligation would end when the child turned eighteen was simply part of its rationale for denying father's petition for rule to show cause; the error assigned by the father did not arise from the appealable final order before this Court. This interpretation is consistent with the father's contemporaneous objection to the final order in this case, alleging that the circuit court "materially erred by dismissing [his] rule to show cause on the basis of [the child] turning 18, thereby mooting [his] rule on this basis."

On appeal, father asks this Court to correct the circuit court's "erroneous statement of law" and "declare[,] should [the child] continue to live with [him] after he reaches the age of 18[,] that the [m]other's duty to pay child support will continue." The issue of when mother's child support obligation would end, however, was neither presented nor ruled on by the circuit court. Accordingly, we do not consider father's argument on appeal. *See Masika v. Commonwealth*, 63 Va. App. 330, 333 (2014) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998))); *see also Ohree*, 26 Va. App. at 308 (declining to review an issue under Rule 5A:18 "because the trial court never ruled" and thus "there is no ruling for us to review on appeal").

### C. *Credit for Nonconforming Child Support Payments*

Father further argues that the circuit court erred by failing to credit him $54,000 for nonconforming child support payments he alleges were made between August 2015 and January

2018, when the child lived with him because the parties had an "unequivocal, implied in fact agreement . . . that the child would live with [him] indefinitely." We disagree.

"Child support payments required under a valid court order become vested as they accrue, and the court is without authority to make any change as to past due installments." *Zedan v. Westheim*, 60 Va. App. 556, 582 (2012) (quoting *Commonwealth v. Skeens*, 18 Va. App. 154, 158 (1994)). "However, although a court may not retroactively modify a child support obligation, allowing a payor spouse credit for non-conforming support payments, *in the limited situations where permitted*, is not a modification of the support order." *Id.* (quoting *Skeens*, 18 Va. App. at 158).

"This Court has established two exceptions to the statutory limitations on retroactive modification of past due child support payments." *Jones v. Davis*, 43 Va. App. 9, 14 (2004). The first exception allows a credit for nonconforming child support payments when the following two conditions are met: "(1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse effect on the support award." *Zedan*, 60 Va. App. at 582 (quoting *Gallagher v. Gallagher*, 35 Va. App. 470, 476 (2001) (en banc)). The second exception allows a credit "where the custodial parent has agreed to relinquish custody on a permanent basis to the other parent." *Id.* at 582-83. Under this second exception, we held that enforcement of the child support order would result in unjust enrichment and that "failure to enforce the letter of this decree under these circumstances will not work to the detriment of the child." *Acree v. Acree*, 2 Va. App. 151, 158 (1986). On appeal, father relies only upon the second, custody-based exception allowing credit for nonconforming child support payments.

Notwithstanding that the circuit court found that mother "did not relinquish custody of [the] child" and that father "without consent, unilaterally stopped paying child support," father's arguments fail by his own admission that the alleged change in custody, however characterized,

was not permanent. As we held in *Gallagher*, the exception father relies on applies only where there has been a "total 'relinquish[ment of] custody on a permanent basis.'" *See Gallagher*, 35 Va. App. at 477 (quoting *Acree*, 2 Va. App. at 157). We explained that "[to] permit modification of a decree by the parties in a case in which the change in custody is less than complete will invite 'continuous trouble and turmoil,' the exact difficulties the rule prohibiting credit for non-conforming payments is designed to avoid." *Id.* (quoting *Henderlite v. Henderlite*, 3 Va. App. 539, 542 (1987)).

Father attempts to avoid our holding in *Gallagher* by asking the Court to "make a good faith extension of existing law" because "a contrary result would result in the [m]other's unjust enrichment and shock the conscience of the average person." In support of his request, father claims that he "in good faith fully performed his support responsibility, assumed primary physical custody of [the child], and provided fully for [the child's] support." Consistent with our prior cases, we decline father's request to extend the law based on claims of unjust enrichment. *See Jones*, 43 Va. App. at 16 (holding that, although "mother would be unjustly enriched in the absence of awarding credits to father . . . the absence of . . . an agreement is fatal to father's claim for credits against child support arrearages"); *see also Gallagher*, 35 Va. App. at 478 (concluding that "[m]other's unjust enrichment is an unfortunate by-product of our decision but, standing alone, does not compel a different result").

As the absence of an agreement granting father permanent custody of the child is fatal to his claim for credit for nonconforming child support payments, we do not address father's argument that the circuit court failed to weigh equitable factors in denying such credit. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("As we have often said, 'the doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.'"

(quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))). Accordingly, we affirm the circuit court's judgment denying father's request for credit for nonconforming child support payments.

## D. *Attorney Fees*

Father contends that the circuit court erred by awarding mother attorney fees and costs when she failed to present evidence in support thereof, namely her affidavit of attorney fees, during her case in chief. Father cites no law or authority in support of his argument that a party must present an attorney fee affidavit before closing argument.

"Rule 5A:20(e) requires an appellant's opening brief to contain the standard of review and the argument, including applicable principles of law and authorities, in support of each of his assignments of error; unsupported assertions of error do not merit appellate consideration." *Winters v. Winters*, 73 Va. App. 581, 597 (2021). "An appellant's failure to strictly adhere to the requirements of Rule 5A:20(e) permits this Court to treat an issue as waived." *Id.* In this case, we find that father's lack of authority in support of his argument is significant and treat his assignment of error as waived. *See Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention." (quoting *Fadness v. Fadness*, 52 Va. App. 833, 851 (2008))).

## E. *Appellate Attorney Fees*

Mother requests her attorney fees and costs incurred while defending this appeal. In this case, the MSA provides as follows:

> The parties agree that any costs, including but not limited to counsel fees, court costs, investigation fees, and travel expense, incurred by a party in the successful enforcement of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action to compel compliance herewith, shall be borne by the defaulting party. Any such costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants, or provisions of this Agreement shall be borne by the party seeking to enforce compliance.

We find that wife prevailed on appeal in enforcing her rights to child support and attorney fees under the MSA. Accordingly, we grant mother's request for appellate attorney fees and costs, and remand to the circuit court to set a reasonable award of attorney fees and costs incurred by mother during this appeal. Rule 5A:30(b).

### III. CONCLUSION

For the foregoing reasons, we affirm and remand this case to the circuit court for determination and award of the appropriate amount of appellate attorney fees, which also should include any additional attorney fees incurred at the remand hearing.

*Affirmed and remanded.*