COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley

ELLETT RICHARD McGEORGE, III AND
 RHETTA MOORE DANIEL

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 13, 2016

v.       Record No. 0413-16-2

CAROLYN TYE McGEORGE

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

(Rhetta Moore Daniel, on briefs), for appellant Ellett Richard
McGeorge, III.

No brief for appellant Rhetta Moore Daniel.

(Susan C. Armstrong; Armstrong Law Firm, PLLC, on brief), for
appellee.

Ellett Richard McGeorge, III (father) and Rhetta Moore Daniel (father's counsel) appeal the

orders that found father in contempt of court for failing to pay child support and uninsured medical

expenses, directed him to pay attorney's fees, and imposed sanctions against father's counsel.

Father argues that the trial court erred by (1) ruling that Carolyn Tye McGeorge (mother) was owed

child support and outstanding medical expenses because the ruling created a manifest injustice and

did not recognize "any mutually enforceable agreements/contracts from 2001 through 2015;"

(2) requiring father to remove a September 18, 2013 letter from his Exhibit A; (3) including only a

September 5, 2013 letter and mother's schedules in father's exhibit A and refusing to allow a

September 18, 2013 letter to remain in father's Exhibit A; (4) ruling that mother's witnesses and

evidence supported a finding that the parties did not have any "enforceable mutual

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

agreements/contracts from 2001 through 2015;" (5) ruling that mother was entitled to a judgment of $171,601.57, plus interest, for arrearages in child support and medical expenses and $10,000 for attorney's fees and costs; (6) failing to determine the correct amount, if any, owed by father, and failing to enter a judgment in favor of father for $18,442.70, plus interest; (7) imposing sanctions on father's counsel; (8) granting mother's motion for sanctions and an award of attorney's fees; (9) stating in its December 8, 2015 order that father's October 16, 2013 email to mother's former counsel was in response to counsel's letter dated September 5, 2013; (10) stating in its December 8, 2015 order that father "testified that he could not recall exactly when the alleged agreement to modify was made, or where, and conceded that it was all verbal, without even an email confirmation;" and (11) holding father in contempt of court for his failure to pay support as previously ordered.

Mother also assigns a cross-error in her brief. She argues that the trial court erred by "arbitrarily limiting" her award of attorney's fees to $10,000.

Upon reviewing the record and briefs of the parties, and for the reasons stated below, we summarily affirm in part, see Rule 5A:27, and dismiss in part.

BACKGROUND

In reviewing a trial court's contempt determination, we view the evidence in the light most favorable to the prevailing party. Glanz v. Mendelson, 34 Va. App. 141, 148, 538 S.E.2d 348, 351-52 (2000).

The parties were divorced on December 21, 2001. The final decree of divorce incorporates their Agreement and Stipulation dated November 30, 2001 (the PSA). Father agreed to pay $1,687 per month, paid in two installments of $843.50 each, for child support for the parties' minor children.[1] Each of the parties also agreed to be responsible for fifty percent of

---

[1] The children were born in January 1992 and August 1995.

"all 'extraordinary medical or dental expenses' as defined by Virginia Code 20-108.2(D), which are incurred by the other party and not covered by any health care insurance." Furthermore, the parties agreed that any modification of child support would be by a consent order or judicial determination.

On May 27, 2015, the trial court entered an order that reinstated the matter on the docket and ordered father to show cause why he is not in contempt. Mother alleged that father had not complied with the final decree's provisions regarding child support and uninsured medical expenses. She asserted that he had not paid child support in full since 2002 and owed $133,345 for child support, plus $84,175.49 in interest, and $11,857.29, not including interest, for uninsured medical expenses.[2] Father argued that the parties agreed to reduce the monthly child support obligation from $1,687 to $1,490, as of January 1, 2003. He also asserted that in June 2010, the parties agreed to reduce the child support further to $745 per month for the benefit of the younger child only, since the older child was no longer a minor. Mother denied that they reached any agreement to modify the support. Regardless, the parties never asked the court to enter a new order modifying the child support amount.

The trial court held a hearing on December 1, 2015. Mother denied agreeing to modify the child support. She testified that father owed her $158,026.62 in arrears. Father admitted he did not make all of the child support payments because he had been unemployed and was caring for his parents and his fiancée's mother. Father testified that the parties agreed that any third-party payments he made on behalf of the children, such as for their vehicles, cell phone bills, and health insurance premiums, would be credits toward his child support obligation and arrears.

---

[2] Mother adjusted these figures during the proceedings.

On December 8, 2015, the trial court issued an order, titled "Letter Opinion."[3] The trial court held that, pursuant to the PSA, any modifications of child support had to be by consent order or judicial determination, which the parties did not seek. It further held that father did not prove the existence of any agreement to lower his child support payments or give him credit for non-conforming payments. The trial court granted mother's motion to find father in contempt for failure to pay child support. It determined that father owed $158,026.62 for child support arrears and $13,575.35 for uninsured medical expenses, for a total of $171,601.97. On December 22, 2015, father filed a thirty-eight-page document titled "Defendant's Objections & Errors Noted to The Honorable Judge Letter Opinion/Order Dated 12/8/15."

On January 29, 2016, the parties appeared before the trial court for a determination of attorney's fees and costs. Mother presented evidence that she incurred $51,262.45 in attorney's fees. After hearing the parties' argument, the trial court awarded $10,000 to mother for her attorney's fees and costs.

On February 1, 2016, father filed a twenty-two-page document titled "Defendant's Jurisdictional Objection & Motion to Set Aside the Above-Referenced Case Based on the Court's Lack of *Corum Non Judice* (Jurisdiction) by Entering a Void *Ab Initio* and *In Toto* Show Cause Order on May 27, 2015."

On February 3, 2016, father filed a 113-page document titled "Defendant's Second Set of Objections & Errors Noted to the Court's Quasi-Letter Opinion/Order Dated December 8, 2015 & the Defendant's First Objections and Errors Note to the Court's Oral Rulings on January 29, 2016."

---

[3] The trial court subsequently entered an order that the December 8, 2015 order was not a final order and continued the matter on the docket.

On February 11, 2016, father filed seven additional motions seeking to reconsider the previous rulings, award him attorney's fees and costs, and remove and sanction mother's counsel.

The trial court held a hearing on February 16, 2016 and, on the same day, it entered a "Final Order." The final order states that the trial court denied father's motions. It also incorporates the "letter opinion" of December 8, 2015 and makes it a part of the final order. The February 16, 2016 order also memorializes the trial court's attorney fees award from the January 29, 2016 hearing.

On February 22, 2016, father filed five separate motions, as well as his third set of objections. In response, mother filed a motion for sanctions against father and father's counsel and requested an award of attorney's fees.

On March 2, 2016, the parties and counsel appeared before the trial court. In addition, attorney Douglas P. Rucker, Jr. noted an appearance and indicated that he was representing father's counsel on the motion for sanctions against her. After hearing the evidence and argument, the trial court denied father's five separate motions and granted mother's motion. The trial court noted that "since that decision of 12-8 of '15, the defendant, through counsel, has filed over 700 pages of motions, objections and/or documents attached to same." The trial court stated that father's counsel had been engaged in "an almost constant refiling and rearguing of groundless motions, all of which have [been] denied and none of which has basis." Pursuant to Code § 8.01-271.1, the trial court, on its own initiative, sanctioned father's counsel. It ordered that father's counsel pay $500 for sanctions and $1,000 for attorney's fees to mother's counsel. On March 3, 2016, the trial court entered an order memorializing its rulings.

On March 15, 2016, father and father's counsel filed a notice of appeal and noted that they were appealing the orders entered December 8, 2015, February 16, 2016, and March 3, 2016.

At the request of father's counsel, on April 21, 2016, the trial court entered an order that granted father's counsel a supersedeas bond in the amount of $1,500 and suspended the execution of the civil monetary sanctions until the appeal is final.

On June 27, 2016, father filed his opening brief. The opening brief lists only the father as the appellant and concludes, "For the reasons stated above, the opinion and orders appealed from should be reversed, together with such other and further relief to Father as this Court deems just and proper." The same request was made in father's reply brief. Father's counsel did not join father's brief or submit her own opening brief.

## ANALYSIS

When a separation agreement is incorporated into a final decree of divorce, the trial court is permitted to use its contempt power to enforce the terms of the agreement. Owney v. Owney, 8 Va. App. 255, 259, 379 S.E.2d 745, 748 (1989). Whether to do so in a particular case lies within the discretion of the trial court. Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991). "[T]hus, we review the exercise of a court's contempt power under an abuse of discretion standard." Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007).

*Father's Assignments of Error #1-5 and 9-11*

Father argues that the trial court erred in finding him in contempt of court for not complying with the parties' PSA and final decree of divorce. He argues that the trial court should have found that the parties entered into an agreement to modify support.

- 6 -

In order to prove the parties' agreement regarding child support, father offered Exhibit A, which consisted of a letter dated September 5, 2013 from mother's former counsel, mother's schedules of child support payments and uninsured medical expenses father owed, and a letter dated September 18, 2013 from mother's former counsel. The trial court refused the letter dated September 18, 2013 and held that the letter was hearsay and contained settlement negotiations. The trial court accepted the September 5, 2013 letter for the sole purpose to show that mother's schedules were transmitted to father.[4] The trial court also accepted into evidence a letter dated October 16, 2013 that father wrote to mother's former counsel. In the October 16, 2013 letter, father was negotiating the amount of child support he owed and the credits he sought. Finally, the trial court accepted into evidence an email dated April 14, 2010. The email was from mother to father and included the following: "Thanks for the check that was under my mail. Just found it. Is that for April's child support? If so, isn't it $1,200 a month reduced from the original $745 twice a month?" Father contends these documents, considered together, support his argument that the parties agreed to modify child support.

Father argues that the trial court erred by not accepting Exhibit A as presented to it. He contends Exhibit A should have not only included the September 5, 2013 letter and mother's schedules, but also the September 18, 2013 letter. He further asserts that the trial court erred by not considering these letters, as well as father's October 16, 2013 letter and mother's April 14, 2010 email, as evidence of the parties' agreement.

In their PSA, the parties agreed to the following: "Upon reaching any mutually agreed recalculation of their respective child support obligations as herein provided for, the parties agree to submit a mutually agreed Consent Order to the appropriate court reflecting the agreed upon

---

[4] Mother subsequently clarified that her schedules were not sent with the September 5, 2013 letter, but she gave them to father after he received the letter.

modification of the child support obligations of each party." The PSA further provided that if the parties could not agree on child support, then they should submit the matter to the appropriate court to decide. In addition, the PSA stated, "Until modified by entry of a mutually agreed Consent Order or a judicial determination if no agreement can be reached, the previously agreed and/or court ordered monthly child support obligations of the parties, respectively, then in effect, shall continue and remain in effect."

"[A] PSA is governed by the same rules of construction applied to other contracts." Stacy v. Stacy, 53 Va. App. 38, 44, 669 S.E.2d 348, 350 (2008) (en banc). "When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." Id. at 44, 669 S.E.2d at 351 (quoting Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc., 276 Va. 285, 289, 662 S.E.2d 77, 80 (2008)).

The PSA was clear and unambiguous as to how the parties could modify their child support obligations. The trial court correctly interpreted the PSA to require the parties to submit a consent order or seek judicial determination prior to any modification of child support. Despite mother's statements to the contrary, father argued that the parties agreed to modify the child support, but they never submitted a consent order. It was not necessary for the trial court to consider the emails and letters exchanged between mother, mother's former counsel, and father because those settlement negotiations were never formalized into a consent order and entered by the court. Therefore, pursuant to the terms of the PSA, father's child support obligations remained as stated in the PSA.

Mother submitted evidence to show the amount of child support arrears and uninsured medical expenses that father owed. Father did not prove that he made additional payments; instead, he argued that he should receive a credit for non-conforming payments that he made on

behalf of the children. As discussed below, the trial court did not err in refusing to credit father for his non-conforming payments.

Consequently, the evidence proved that father owed $158,026.62 for child support arrears, including principal and interest, and $13,575.35 for uninsured medical expenses. The trial court did not err in finding father in contempt for failure to comply with the PSA and final decree of divorce.

*Father's Assignment of Error #6*

Father argues that the trial court erred by not crediting him for third-party payments he made on behalf of the children. Father contends he should have received a credit for the tax exemptions he gave mother. He also requested credits for the payments he made toward the children's telephone bills, health insurance premiums, legal fees, and college tuition. Father also gave one of the children a vehicle to drive and paid for the repairs, property tax, and maintenance costs of that vehicle.

Father acknowledges that Virginia generally does not allow credits for non-conforming payments. See Commonwealth v. Skeens, 18 Va. App. 154, 158, 442 S.E.2d 432, 435 (1994) ("Generally, the terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree."). He notes there are exceptions to this rule and relies on Acree v. Acree, 2 Va. App. 151, 342 S.E.2d 68 (1986), to support his argument. However, this Court has noted that Acree had "unique facts" and is limited to cases in which there has been a complete change in custody, so that the parent who had the obligation to pay child support now has custody of the children. Gallagher v. Gallagher, 35 Va. App. 470, 476-77, 546 S.E.2d 222, 225 (2001) (en banc). This case does not have the same "unique facts" as Acree.

The Court has held that two conditions must exist before it can approve non-conforming payments: "(1) an agreement by the parties which modifies the terms or method of payment; and (2) no adverse effect on the support award." Zedan v. Westheim, 60 Va. App. 556, 582, 729 S.E.2d 785, 798 (2012) (quoting Gallagher, 35 Va. App. at 476, 546 S.E.2d at 225). The Court further clarified that payments to third-party vendors, such as a school, day care, doctors, and food, are considered gifts or gratuities, and do not entitle a payor to receive credit. Id. at 583, 729 S.E.2d at 798; Gallagher, 35 Va. App. at 479, 546 S.E.2d at 226.

The trial court held that father failed to prove the parties had an agreement to credit him with non-conforming payments he made on behalf of the children. Mother denied that the parties reached any agreements on modifying child support. Furthermore, contrary to his arguments, father's payments to third-party vendors are considered gifts, and he is not entitled to any credits for such payments. See Zedan, 60 Va. App. at 583, 729 S.E.2d at 798; Gallagher, 35 Va. App. at 479, 546 S.E.2d at 226. Based on the evidence, the trial court did not err in refusing to give father credits for any non-conforming payments he made.

*Father's Assignments of Error #7 and 8*

Both the seventh and eighth assignments of error concern the sanctions against father's counsel. The seventh assignment of error states, "The trial court erred in imposing sanctions on the Father's counsel." The eighth assignment of error states, "The trial court erred in granting Plaintiff's Motion for Sanctions and Award of Attorney's Fees on Father's counsel."

Code § 8.01-271.1 states, in pertinent part:

> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

- 10 -

. . . .

> If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

The trial court found that the post-trial motions filed by father's counsel "were not well ground in fact and not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and were otherwise improper repetitions of matters previously raised by [father's] counsel." Upon its own initiative, pursuant to Code § 8.01-271.1, it sanctioned father's counsel in the amount of $500. It also granted wife's motions for sanctions and award of attorney's fees and ordered father's counsel to pay $1,000 toward mother's attorney's fees. The March 3, 2016 order stated that father's counsel was ordered to pay a total of $1,500 to mother's counsel within thirty days of March 2, 2016.

Thus, the party aggrieved by the circuit court's order regarding sanctions was father's counsel, not father. Father's counsel realized this fact because she had counsel at the March 2, 2016 hearing. Attorney Rucker noted his appearance at the hearing and stated that "I'm here as Ms. Daniel's lawyer since this is a sanctions motion."

Therefore, the proper appellant in regard to the sanctions order is father's counsel, not father. The notice of appeal named both father and his counsel as appellants. However, the opening brief was not filed on behalf of counsel, but only filed on behalf of father, listing him as the sole appellant. This omission is fatal to our review of the seventh and eighth assignments of error.

Rule 5A:20 governs the filing of the opening briefs of an appellant in this Court. Our prior cases recognize that when a lawyer becomes an aggrieved party in a circuit court

- 11 -

proceeding, such as after a finding of contempt or an award of sanctions against her, she may file a brief in her own name challenging the adverse ruling. See, e.g., Vinson v. Vinson, 41 Va. App. 675, 675 n.1, 588 S.E.2d 392, 392 n.1 (2003) (recognizing that a sanctioned attorney could file an appellate brief in his own name even though the case remained styled in the name of the parties). Here, because no brief was filed on behalf of counsel as a party-appellant, she did not satisfy any of the requirements of Rule 5A:20. Accordingly, the case has not been presented in a posture to allow us to reach the circuit court's alleged error in sanctioning father's counsel and ordering her to pay $1,500 to mother's counsel. Therefore, dismissal of this portion of the appeal is appropriate. Rule 5A:26.

*Father's Assignment of Error #5 and Mother's Assignment of Cross-Error*

At the hearing on January 29, 2016, mother submitted to the trial court an affidavit, with copies of bills, showing that the total fees and costs due to her counsel was $51,262.45 as of January 29, 2016. The trial court ordered father to pay $10,000 of her attorney's fees.

Father argues that the trial court abused its discretion by awarding mother $10,000 for her attorney's fees and costs. Mother argues that the trial court erred by "arbitrarily limiting" her award of attorney's fees to $10,000.

"[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

The parties' agreement included the following provision:

> Husband and Wife agree that any reasonable costs, including, but
> not limited to counsel fees, court costs, investigation fees and

travel expenses, incurred by a party in the successful enforcement
of any of the agreements, covenants, or provisions of this
Agreement, if litigation or other action necessary to compel
compliance herewith, shall be borne by a defaulting party, if so
ordered by the tribunal.

On appeal, mother first argues that the agreement did not allow the trial court to set the amount of fees, once it ordered the award of attorney's fees. Mother raises this argument for the first time on appeal, so we will not consider it.[5] See Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (We "will not consider an argument on appeal which was not presented to the trial court.").

Both of the parties argue that the trial court abused its discretion by awarding $10,000 to wife for her attorney's fees. In deciding the issue of attorney's fees, the trial court considered "the circumstances and the equities and the facts," as well as father's ability to pay. In addition, the trial court said,

And, most importantly, . . . as I'm looking at my letter opinion
from 12-8-15 where I was talking about the evidence in this case,
. . . I said and I quote "at best, the evidence was ongoing
disagreements and arguments over many years as to the child
support, but there was insufficient evidence of any agreement as to
support modification."

The trial court concluded, "So I don't find the equities in the law would warrant that Mr. McGeorge have to pay all of Ms. McGeorge's legal fees by any imagination. . . . I do think that Ms. McGeorge is entitled to some award of attorney's fees." The trial court then awarded $10,000 in attorney's fees to mother.

---

[5] In addition, we note that mother's counsel agreed with the trial court's interpretation of the parties' agreement at the hearing on January 29, 2016. The trial court stated that it was not "an automatic" that a party would receive all of her attorney's fees and costs because the agreement stated that they had to be "reasonable" and "if so ordered by the tribunal." The trial court interpreted this language to mean that it had discretion, and it was "not an automatic 'shall' for the total amount." After announcing its interpretation, mother's counsel responded, "I agree with the Court's interpretation as well."

Contrary to mother and father's arguments, the trial court did not abuse its discretion with its award of attorney's fees. Considering the factors in this case, the attorney's fees award was reasonable.

*Appellate Attorney's Fees and Costs*

Mother asks this Court to award her attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Having reviewed and considered the entire record in this case, we hold that mother is entitled to a reasonable amount of attorney's fees and costs, and we remand for the trial court to set a reasonable award of attorney's fees and costs incurred by mother in this appeal. Rule 5A:30(b).

CONCLUSION

For the foregoing reasons, we summarily affirm in part, Rule 5A:27, and dismiss in part. We remand this case to the trial court for determination and award of the appropriate appellate attorney's fees and costs, which also should include any additional attorney's fees and costs incurred at the remand hearing.

Affirmed in part,
dismissed in part,
and remanded.